U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JAN 23　PM 4: 14

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MICHAEL I. GOLDBERG, )
*as Court-Appointed Receiver in Securities* )
*and Exchange Commission v. Ariel Quiros* )
*et al., U.S. District Court of South Florida,* )
*Case No. 16-cv-21301-Gayles,* )
)
　　　　Plaintiff, )
)
　　　　v. )　　　　Case No. 2:17-cv-00061
)
LOUIS DUFOUR, LOUIS P. HEBERT, and )
SAINT-SAUVEUR VALLEY RESORTS, )
INC., )
)
　　　　Defendants. )

## OPINION AND ORDER
## DENYING DEFENDANT SAINT-SAUVEUR VALLEY RESORTS, INC.'S
## MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS
## THE THIRD AMENDED COMPLAINT

(Docs. 105, 106, 120)

Plaintiff Michael I. Goldberg, Esq. brings this action as a court-appointed receiver

on behalf of Jay Peak Hotel Suites LP ("Phase I") and Jay Peak Hotel Suites Phase II LP

("Phase II"), which were formed pursuant to the federal EB-5 Immigrant Investor

Program (the "EB-5 Program") in order to facilitate investment in Jay Peak, Inc., a

Vermont corporation which was the owner of a ski resort in Jay, Vermont (the "Resort").

In June 2008, Saint-Sauveur Valley Resorts, Inc., currently known as Valley Summits,

Inc. ("SSVR"), sold Jay Peak to Ariel Quiros and his corporation, Q Resorts, Inc. ("Q

Resorts").

In his Third Amended Complaint ("TAC"), Plaintiff asserts the following claims

against SSVR as well as proposed Defendants Louis Dufour and Louis Hebert: Count

One: breach of fiduciary duty and Count Two: violations of the Vermont Fraudulent

Transfer Act ("VFTA"), 9 V.S.A. §§ 2288 and 2289. Although framed as separate counts as opposed to remedies, in Count Three Plaintiff seeks exemplary damages and in Count Four he seeks a constructive trust.

Pending before the court is SSVR's motion to strike unauthorized new parties and claims from the TAC (Doc. 105) and its motion to dismiss the same (Doc. 106), as well as Defendants Dufour's and Hebert's separate motion to dismiss the TAC. (Doc. 120.) Plaintiff is represented by Joshua L. Simonds, Esq., and Keith L. Miller, Esq. Defendants are represented by David M. Pocius, Esq., and Laurence May, Esq.

## I. Whether Plaintiff May Amend His Complaint to Add Defendants Dufour and Hebert and Assert New Claims.

SSVR requests the court to strike from the TAC the addition of Defendants Dufour and Hebert as well as Plaintiff's claims for punitive damages and a constructive trust, arguing that the court authorized only a limited amendment to Plaintiff's Second Amended Complaint ("SAC") "to cure pleading deficiencies raised by [SSVR's] Motion for More Definite Statement[.]" (Doc. 105 at 1.) Citing the hearing transcript for the court's authorization, Plaintiff points to the representations he made regarding the expansion of his claims and the court's agreement that additional claims and parties were permissible.

Fed. R. Civ. P. 15(a) allows parties to amend their pleadings once as a matter of course within twenty-one days of service or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or applicable motion. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 expressly instructs courts to "freely give leave when justice so requires." *Id.*

In granting SSVR's motion for a more definite statement, the court acknowledged that Plaintiff might add new parties and claims and granted SSVR additional time to file a motion to dismiss on that basis. *See* Doc. 98 at 26:7-12 (clarifying at the March 8, 2019 hearing that the new Complaint "needs to include the more definite statement, and I'm hearing from plaintiff it's going to include a lot of other stuff, and then you have asked

2

for and been granted 28 days thereafter to file a motion to dismiss, to file an answer, to file third party claims, and we'll go from there"). Plaintiff's addition of new claims and Louis Dufour and Louis Hebert as proposed defendants thus falls within the scope of the court's ruling. SSVR's motion to strike Plaintiff's new parties and request for additional remedies is therefore DENIED.

Having denied SSVR's motion to strike, the court must still analyze whether Plaintiff's specific revisions are permissible. "Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted[.]" *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citations omitted). "The adequacy of the proposed amended complaint[] . . . is to be judged by the same standards as those governing the adequacy of a filed pleading." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

A court faced with an amended complaint and a motion to dismiss at the same time may determine whether dismissal is appropriate in the context of the amended complaint. *See A.M. by & through Messineo v. French*, 2019 WL 7038208, at *2 (D. Vt. Dec. 20, 2019) ("In order to further the 'just, speedy, and inexpensive determination' of this action, Fed. R. Civ. P. 1, the court considers Defendant's arguments for dismissal in light of the [first amended complaint]."). In this case, the court applies Defendants' arguments in support of dismissal to the TAC.

## II. The TAC's Allegations.

The TAC contains a lengthy introduction which is not set forth in numbered allegations and to which Defendants have no obligation to respond. *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."); *see also Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, 2018 WL 791405, at *7 (W.D. Pa. Feb. 8, 2018) (granting motion to strike "the 'introduction' section of Plaintiff's Amended Complaint, a four-page prosaic narrative that [defendant] argues is patently redundant of later paragraphs and violates [Fed. R. Civ. P.] 10(b), which requires claims to be set forth in numbered paragraphs limited to a single set of circumstances" and finding defendant "need only

3

respond to the numbered paragraphs."); *Katz v. Am. Exp. Co.*, 2014 WL 6470595, at \*6
(D. Haw. Nov. 18, 2014) (criticizing amended complaint's "long narrative" introduction
and observing that "superfluous allegations only make[] discerning the true basis of
Plaintiffs' claims that much more difficult"). Because Plaintiff has been granted several
opportunities to amend his Complaint, is represented by counsel, and is himself an
attorney, the court disregards the TAC's "Introduction" on the grounds that Plaintiff's
factual allegations do not incorporate it by reference.

With regard to Plaintiff's factual allegations set forth in a section titled "THE
ACTS GIVING RISE TO THE CLAIM" (Doc. 96, at 8), the court agrees with SSVR that
the TAC addresses "Defendants" collectively even though this designation is, at times,
inaccurate. In the Second Circuit, grouping defendants is permissible where the
defendants are "plural author[s]" or act in concert. *See Loreley Fin. (Jersey) No. 3 Ltd. v.
Wells Fargo Sec., LLC*, 797 F.3d 160, 173 (2d Cir. 2015) (holding that "identification of
the group suffices to meet the particularity of attribution required by Rule 9(b)" where
"[t]he entities named in the complaint and treated collectively were . . . 'insiders or
affiliates'") (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990)). The
court thus addresses Plaintiff's "group pleading" only to the extent that it creates
confusion or is contradicted by the exhibits attached to the TAC. *See L-7 Designs, Inc. v.
Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (ruling that for purposes of a motion to
dismiss, the court accepts the complaint's factual allegations as true "unless contradicted
by . . . documentary evidence . . . from the exhibits attached" to the complaint).

Plaintiff alleges that he is a court-appointed receiver for, among others, six
Vermont limited partnerships (Phase I-VI) in a Securities and Exchange Commission
("SEC") civil enforcement proceeding with regard to the sale of the Resort in an action
styled *Securities and Exchange Commission v. Ariel Quiros et al.*, Case No. 16-21301-
Gayles (the "SEC Action"). He attaches to the TAC the Order granting the SEC's motion
for appointment of a receiver which authorizes Plaintiff to:

> . . . institute such actions and legal proceedings, for the benefit and on
> behalf of the Corporate Defendants [which include Jay Peak Hotel Suites,

4

LP (Phase I) and Jay Peak Hotel Suites Phase II, LP (Phase II), Jay Peak Management, Inc. ("JPM")] and their investors . . . as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Corporate Defendants and Relief Defendants, including the Corporate Defendants, the other Defendants, and the Relief Defendants, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Corporate Defendants and Relief Defendants; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, [and] the collection of debts[.]

(Doc. 96-1 at 4-5.)

SSVR is a Canadian corporation registered to do business as a foreign corporation in Vermont. At all relevant times, William Stenger was a Vice-President of SSVR, Defendant Dufour was SSVR's Chairman and Chief Executive Officer ("CEO"), and Defendant Hebert was its President.

The TAC alleges that Phase I and Phase II were created by "Defendants" to raise capital to develop the Resort. At some time in 2006, "Defendants" developed a plan to use the EB-5 Program for this purpose with the expectation that EB-5 investors would "tender[] funds in exchange for interests/shares in Vermont limited partnerships." (Doc. 96 at 7, ¶ 14.) In December of 2006, Plaintiff alleges that "Defendants" created JPM under Vermont law to act as a General Partner of the EB-5 limited partnerships and that JPM was a wholly owned subsidiary of SSVR with Defendant Dufour as its CEO, Defendant Hebert as its COO, and William Stenger as its President. Plaintiff alleges that an Offering Memorandum for Phase I sought to raise $35.5 million to build a new hotel at the Resort and another Offering Memorandum for Phase II sought $75 million to build a second hotel, an indoor waterpark, indoor ice-skating rink, and golf clubhouse. Although Plaintiff asserts that the Phase I and Phase II Offering Memoranda are attached

5

to the TAC as Exhibit 2, that exhibit consists of a Declaration by SSVR and a Stock Transfer Agreement ("STA").

Plaintiff asserts that on March 15, 2007, an escrow account was opened at Chittenden Bank in Burlington, Vermont by "Defendants" to hold Phase I investor funds. The account in question, however, does not appear to have been opened by SSVR, but instead appears to have been opened by JPM. Defendants Dufour and Hebert as well as Mr. Stenger are listed as signatories on JPM's behalf. A second escrow account is alleged to have been opened on an unspecified date by "Defendants" at Chittenden Bank to hold Phase II funds. Plaintiff alleges that "although Phase II had no legal existence prior to the sale of the Resort to Quiros[,] Defendants nonetheless solicited, received and deposited in excess of $7 million into the Phase II escrow account prior to the sale." *Id.* at 8, ¶ 17. The document reflecting the opening of the Phase II account has not been included as an attachment to the TAC. It therefore remains unclear who opened the account or otherwise participated in its creation.

Plaintiff further alleges:

> Defendants, using [JPM], exercised control over the monies collected for the Phase I and Phase II projects. Phase I raised $17.5 million from 36 investors from December, 2006 through May 2008. Phase II raised $7.5 million from 15 investors between March, 2008 and the sale of the Resort to QResorts on June 23, 2008. Another $7.5 million was raised for Phase II from 15 investors from the sale date through September 2008.

*Id.* at ¶ 18.

On May 20, 2008, several weeks prior to the execution of the STA, Plaintiff alleges that William Stenger and Defendants Dufour and Hebert opened an account at Raymond James Associates, Inc. ("Raymond James") in Coral Gables, Florida, which was managed by Mr. Quiros's former son-in-law, Joel Burstein. The account document attached to the TAC indicates the account was opened by Phase I and JPM and that Mr. Stenger and Defendants Dufour and Hebert were signatories on behalf of JPM, not SSVR.

6

The "Base Transfer Price" under the STA was $15 million. Plaintiff alleges that "[b]ank documents indicate that on June 16, 2008, just prior to the closing on the sale, Dufour and Hebert specifically instructed Chittenden Bank to transfer $8 million from the Phase I escrow account to the account at Raymond James[.]" *Id.* at 9, ¶ 21. Three days later, on June 19, 2008, William Stenger directed the transfer of $7 million from the Phase II escrow account at Chittenden Bank to a designated Raymond James account. (Doc. 96-7.) Although Plaintiff asserts that Mr. Stenger was acting "in his capacity as President of [JPM]," (Doc. 96 at 9, ¶ 22) the exhibit he relies on for this assertion includes a handwritten direction from Mr. Stenger as President of "Jay Peak Resort." (Doc. 96-7 at 2.) Plaintiff alleges that Mr. Stenger "then transferred the $15 million into accounts opened and controlled by Quiros at Raymond James" and that $15 million was "the exact amount recited in the STA" as the Base Transfer Amount "required by Quiros to close on his purchase of the Resort." (Doc. 96 at 9, ¶ 23.) Mr. Quiros used "this $15 million of escrowed Phase I and II investor funds as payment to buy the Resort by the transfer of SSVR's shares of Jay Peak." *Id.* at ¶ 24. Plaintiff alleges that "[o]ver the next three months, Quiros paid the remaining balance owed to SSVR, also using Phase I and II investor funds, bringing the total amount paid to and received by SSVR to $2[1],936,030." *Id.* at ¶ 25.

Plaintiff claims that "Defendants" fraudulently "solicited and collected millions of dollars of investor monies, promised to be used solely for the Phase I and II developments, but which were instead converted and given to Quiros by Defendants, prior to the purchase, which Quiros then tendered back to SSVR as payment for the Resort." *Id.* at 10, ¶ 27.

In support of his breach of fiduciary duty claim, Plaintiff contends that "Defendants" owed a fiduciary duty to Phase I and II investors to "maintain and control [their] funds so that they were utilized solely to build improvements" to the Resort. *Id.* at 10-11, ¶ 32. Defendants allegedly breached that duty by taking "conscious and affirmative steps" to release escrowed funds and transfer them to Mr. Quiros prior to the closing of the sale of the Resort, by "consciously taking receipt of these same previously

7

escrowed funds as payment for the sale of the shares of Jay Peak to QResorts" despite their knowledge that the funds belonged to Phase I and Phase II investors, and by "[a]bsconding with such funds and removing them from the [United States.]" *Id.* at 11, ¶ 33.

Plaintiff further asserts that "Defendants" transferred Phase I and Phase II funds to Mr. Quiros with "the actual intent to hinder, delay or defraud the investors[]" in violation of 9 V.S.A. § 2288(a)(1), and/or by transferring "those investor funds without receiving a reasonably equivalent value in exchange for the transfer, rendering Phase I and II insolvent" in violation of 9 V.S.A. § 2289(a). (Doc. 96 at 12, ¶ 37.) Because Defendants took the funds as transferees or as persons for whose benefit the transfer was made, Plaintiff alleges that the transfers are voidable and he is entitled to recover $21,936,030 pursuant to 9 V.S.A. §§ 2291 and 2292.

Plaintiff seeks exemplary damages on the grounds that Defendants' conduct was "intentional and knowing, and done for personal gain with a full understanding that Phase I and II investors would suffer financially[.]" *Id.* at 13, ¶ 40. Depending on the outcome of the sale of the Resort, which is currently on the market, Plaintiff asks the court to create a constructive trust on behalf of thirty-six Phase I investors and 150 Phase II investors. The Phase I investors seek $50,000 each in administrative fees, and the Phase II investors seek $550,000 each in lost investments and administrative fees, totaling what Plaintiff alleges in the TAC is $84,250,000.[1]

Plaintiff asserts that the proceeds from the sale of the Resort will first be used to pay costs of the sale and obligations of the receivership estate, with the remaining balance distributed pro rata to Phase II through VI investors up to their capital investments. If the Resort has been sold at the time of the entry of a judgment in Plaintiff's favor, Plaintiff seeks damages in an amount equal to the outstanding balance necessary to make the Phase I and Phase II investors whole. If the Resort has not been sold at the time of judgment, Plaintiff requests the court to establish a constructive trust to

---

[1] This amount appears to reflect a computation error and the actual amount is $84,300,000.

hold the amount awarded in damages until the Resort's sale. Once the Resort is sold, Plaintiff seeks to distribute the proceeds from its sale, use funds from the constructive trust to make the Phase I and Phase II investors whole, and then refund any remaining monies to Defendants.

## III. Conclusions of Law and Analysis.

### A. Whether the Court may Consider Documents Attached to SSVR's Motion to Dismiss and Plaintiff's Opposition.

In deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(1), the court may consider not only the complaint but the parties' affidavits and declarations in support of their arguments. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (holding court may "consider[] materials outside the pleadings, . . . without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment.").

In adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the court may consider not only the TAC but "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference[,]" any documents "integral to the complaint," and any matters of which judicial notice may be taken. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (internal quotation marks omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). A court "may properly take judicial notice of [a] document (without converting [the] motion to dismiss into a motion for summary judgment) [where] the [document] is publicly available and its accuracy cannot reasonably be questioned." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (citing Fed. R. Evid. 201(b)).

The parties ask the court to consider the following documents in adjudicating Defendants' motions to dismiss:

### 1. The Complaint in the SEC Action.

SSVR and Plaintiff ask the court to consider the allegations from the SEC Complaint. Because the SEC Complaint is integral to the TAC, it may be considered in adjudicating Defendants' motions to dismiss. *See Nicosia*, 834 F.3d at 230.

### 2. The June 16, 2008 Letter from SSVR's Counsel to Raymond James.

In his opposition, Plaintiff requests consideration of a June 16, 2008 letter from SSVR's counsel to Raymond James, copying Mr. Quiros and Mr. Stenger, in which SSVR's counsel advised that Phase I investor funds could only be used in the manner specified in the Phase I limited partnership agreement and could not be used by Q Resorts to purchase the Resort. This letter is cited and quoted in the SEC Complaint and is therefore properly before the court.

### 3. The Complaint in *Goldberg v. Mitchell, Silberberg & Knupp, LLP*, No. 19-cv-21862 (S.D. Fla.).

On October 21, 2019, SSVR filed a notice of additional authority requesting that the court consider a complaint Plaintiff filed in the Southern District of Florida on May 8, 2019, against law firms which acted as counsel for some of the receivership entities (the "*Mitchell* Complaint"). *See Goldberg v. Mitchell, Silberberg & Knupp, LLP*, No. 19-cv-21862 (S.D. Fla.). The *Mitchell* Complaint alleges that SSVR transferred Phase I and Phase II funds from accounts at People's United Bank to Raymond James and that Mr. Quiros transferred $13.6 million from these accounts to purchase Jay Peak. The *Mitchell* Complaint further alleges that "[o]ther members of management, including Stenger, did not know that Quiros had improperly used investor funds to purchase Jay Peak." (Doc. 142 at 2) (emphasis omitted). Defendants contend that "[t]hese allegations directly contradict Plaintiff's allegations in this case that 'defendants' intentionally transferred partnership funds to Raymond James knowing and intending that Quiros would use the money to purchase Jay Peak" and in the *Mitchell* Complaint "Plaintiff has formally alleged, subject to Fed. R. Civ. P. 11's pleading requirements, a factual position directly contradictory to his position and allegations in this case." *Id.*

Courts may take judicial notice of facts that are "not subject to reasonable dispute"

because they: (1) are "generally known within the trial court's territorial jurisdiction[,]" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Publicly available documents, including "document[s] filed in another court[,]" may be judicially noticed "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.C.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks omitted); *see also Apotex Inc.*, 823 F.3d at 60 (taking judicial notice of "publicly available" Food and Drug Administration guidance because its "accuracy cannot reasonably be questioned").

Because the *Mitchell* Complaint is a publicly available document, the court may take judicial notice of its existence as well as the representations made therein, although it may not take judicial notice of the truth of those statements. Nonetheless, Defendants are correct that when a party makes a factual representation in one lawsuit which is inconsistent with the position the party takes in another lawsuit, the inconsistent statements may be treated as binding judicial admissions. *See United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) (noting that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney[]" and "the law is quite clear that superseded pleadings in civil cases may constitute admissions of party opponents, admissible in the case in which they were originally filed, as well as any subsequent litigation involving that party") (internal quotation marks omitted); *see also United States v McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("A party . . . cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.").

## B. Whether the Court may Exercise Personal Jurisdiction Over Defendants Dufour and Hebert.

Defendants Dufour and Hebert assert that the court does not have personal jurisdiction over them because, as Canadian residents, they do not have sufficient

11

minimum contacts with Vermont and because any action taken solely in their capacities as corporate officers cannot be relied upon to confer personal jurisdiction over them as individuals. "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted).

Defendants Dufour and Hebert assert that Plaintiff waited two years to join them as defendants notwithstanding Plaintiff's possession of documents since April 2016 which Plaintiff now relies on as the basis of his claims against them. They contend Plaintiff seeks to add them as defendants "for the sole purpose of harassing them or impugning their reputations." (Doc. 120 at 2.) They challenge the court's personal jurisdiction over them, arguing that Plaintiff fails to satisfy the requisite burden of proof.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). As the Second Circuit has explained:

> [I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.

*Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) (internal quotation marks omitted) (alteration in original) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567).

12

In Vermont, a court may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted); *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute[] . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990) (providing that "once the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable") (citation and internal quotation marks omitted).

Plaintiff alleges that the court has personal jurisdiction over Defendants Dufour and Hebert because they "engaged in wrongful acts in Vermont while acting in their capacity as officers of a corporation registered and doing business in Vermont." (Doc. 96 at 6, ¶ 6.) Although this allegation is conclusory, it is supported by the documentary evidence attached to the TAC which reveals Defendants Dufour and Hebert engaged in business activities directed towards Vermont in their roles as officers of JPM and, to a lesser extent, in their capacity as officers of SSVR. Plaintiff's claims arise directly out of those activities.

"[A] State may authorize its courts to exercise [specific] personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (second alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (internal quotation marks omitted). The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).

Here, Plaintiff asserts that Defendants Dufour and Hebert signed Phase I account documents at Chittenden Bank in Vermont, on behalf of JPM. (Doc. 96 at 8, ¶ 16; Doc. 96-4 at 3.)[2] Plaintiff further alleges they authorized transfers from Phase I and II accounts at Chittenden Bank in Vermont to a Raymond James account in Florida. (Doc. 96 at 9, ¶ 21.) Although Defendants Dufour and Hebert argue that none of their actions took place in Vermont but were instead conducted from Canada, "a nonresident's physical presence within the territorial jurisdiction of the court is not required" to establish personal jurisdiction. *Walden*, 571 U.S. at 283; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

Defendants Dufour and Hebert further argue that because their contacts occurred solely in their capacities as corporate officers, "[t]o assert personal jurisdiction over the defendants in their individual capacities, [the court] must find an independent basis apart

---

[2] Although the New Account Worksheet lists Jay Peak, Inc. as the business opening the account, the Business Account Agreement identifies JPM. *See* Doc. 96-4 at 2-3.

14

from [its] . . . determination of jurisdiction over the corporation." *Stuart v. Fed. Energy Sys., Inc.*, 596 F. Supp. 458, 461 (D. Vt. 1984); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him[.]"). While this is an accurate statement of the law it does not trump the Second Circuit's instruction to "look to the totality of Defendants' contacts with the forum state." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). In *Chloe*, the court found New York law "confers jurisdiction over individual corporate officers who supervise and control [trademark] infringing activity." *Id.* (citing N.Y. C.P.L.R. § 302(a) (McKinney)). For that reason, it rejected a claim by a corporate employee that corporate acts could not be imputed to him, concluding that a plaintiff need not establish a formal agency relationship between an individual defendant and his employer; "[r]ather, the plaintiff only needed to convince the court that the party over whom he was seeking to assert jurisdiction 'engaged in purposeful activities in [New York] . . . and that [the employer] exercised some control over [defendant] in the matter.'" *Id.* at 168 (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988)).

Under Vermont law, merely alleging that a defendant conspired with others who engaged in tortious activity in Vermont is insufficient. *See Schwartz v. Frankenhoff*, 733 A.2d 74, 80 (Vt. 1999) (observing that "[n]o court will accept conclusory allegations of a conspiracy, without more, as sufficient to establish personal jurisdiction over an alleged member of the conspiracy") (citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) (rejecting "bland assertion of conspiracy or agency" as sufficient to sustain personal jurisdiction)). However, "if an office or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom." *Prive v. Vt. Asbestos*, 2010 VT 2, ¶ 17, 187 Vt. 280, 289, 992 A.2d 1035, 1041. Plaintiff asserts this type of allegation in the TAC, citing a June 16, 2008 "warning letter" Defendants Dufour and Hebert sent advising that the Phase I and II transferred funds should not be used to fund,

15

or used as collateral for, a purchase of the Resort. Plaintiff contends this warning letter evinces a "specific demonstration of Dufour's and Hebert's consciousness of the possibility, indeed the likelihood that Quiros would misuse these monies, particularly given the fact that there was no bank involved in the transaction, and no evidence that Quiros ever demonstrated to Defendants his source of funds for the purchase." (Doc. 134 at 12.) Plaintiff further contends that Defendants Dufour's and Hebert's participation in the transfer of an additional $7 million in funds to Raymond James after this warning letter was sent was supported by "no reasonable explanation of this payment, other than to permit the purchase to proceed with funds stolen from Phase I and II limited partnerships." *Id.* Plaintiff's arguments constitute reasonable inferences from the documents before the court and Plaintiff may rely on them in establishing personal jurisdiction.

Defendants Dufour's and Hebert's "status as employees [or corporate officers] does not somehow insulate them from jurisdiction[,]" *Calder v. Jones*, 465 U.S. 783, 790 (1984), and this court has exercised personal jurisdiction over defendants who were alleged to have "perpetrated a fraud aimed at Vermont" even though they acted "only in their capacity as corporate representatives" because the defendants "were not mere employees, but the primary promoters of the franchise and the moving spirit of the corporation." *Stuart*, 596 F. Supp. at 461-62. Because Plaintiff plausibly alleges that Defendants Dufour and Hebert directed activities at the forum state as corporate officers which reasonably placed them on notice that they could be haled into this forum's courts, at the pleading stage Plaintiff alleges sufficient minimum contacts to support an exercise of specific jurisdiction.

"[T]raditional notions of fair play and substantial justice" also support the exercise of personal jurisdiction over Defendants Dufour and Hebert. *See Goodyear*, 564 U.S. at 923 (internal quotation marks omitted). In making this determination, the court evaluates:

[T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief,

16

the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (internal quotation marks omitted). "Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Bank Brussels Lambert*, 305 F.3d at 129 (citing *Metro. Life Ins. Co.*, 84 F.3d at 568).

Defendants Dufour and Hebert do not argue that it would be unfair or unreasonable to require them to litigate in Vermont and indeed do not address the reasonableness prong at all. "[T]he conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metro. Life Ins. Co.*, 84 F.3d at 574. Vermont is the "center of the . . . transaction and home to the [bank] branch which disbursed the funds," supporting Vermont's "unquestionable interest in adjudicating the claim[,]" and much of the evidence and witnesses are located in Vermont, enhancing the "ease of access to evidence and the convenience of witnesses" if the lawsuit is permitted to proceed here. *Bank Brussels Lambert*, 305 F.3d at 130. Vermont law governs Plaintiff's claims and thus the court's exercise of jurisdiction will enhance rather than frustrate "the interstate judicial system's interest in obtaining the most efficient resolution of controversies[.]" *Burger King*, 471 U.S. at 477 (internal quotation marks omitted).

Because Plaintiff has established that Defendants Dufour and Hebert have sufficient minimum contacts with Vermont to support specific jurisdiction and because the exercise of personal jurisdiction over them is reasonable, the court DENIES Defendants Dufour's and Hebert's motion to dismiss for lack of personal jurisdiction.

## C. Whether Plaintiff has Standing to Bring His Claims Against Defendants.

Defendants argue that Plaintiff lacks standing to bring his claims because those claims are based on injuries allegedly suffered by the individual Phase I and II investors, and "Plaintiff does not allege that he was appointed to represent the interests of individual

17

investors allegedly harmed by the purported conduct set forth in the SEC Action." (Doc. 106-1 at 10-11; Doc. 120 at 18-19.) In addition, SSVR points out that in *Qureshi v. People's United Financial, Inc.*, 18-cv-000163 (D. Vt.), the investors have commenced their own class action in this court to recover some of the same damages Plaintiff seeks in this lawsuit.

The Receivership Order authorizes Plaintiff to "institute such actions and legal proceedings, for the benefit and on behalf of the Corporate Defendants [including Phase I and II LPs] . . . and their investors . . . as [Plaintiff] deems necessary[.]" (Doc. 96-1 at 4, ¶ 2.) Based on the plain language of the Receivership Order, Plaintiff's appointment includes instituting legal actions on behalf of the Phase I and II investors, including requesting a constructive trust on their behalf. The court therefore DENIES Defendants' motions to dismiss on the basis that the Receivership Order does not grant Plaintiff authority to pursue damages claims for Phase I and Phase II investors. Whether any damages Plaintiff seeks to recover are duplicative of damages sought by the plaintiffs in *Qureshi* must await a future determination.

## D. Whether Plaintiff States a Claim Against SSVR Based Upon the Acts or Omissions of its Wholly Owned Subsidiary JPM.

Based upon Plaintiff's more definite statement as reflected in the TAC, SSVR renews its motion to dismiss all claims against it because Plaintiff's claims do not lie against SSVR but instead lie against JPM. SSVR argues that Plaintiff's reference to "Defendants" cannot obscure the uncontested nature of this proof and that Plaintiff's obfuscation is intentional because Plaintiff has no incentive to bring his claims against the proper defendant. According to SSVR:

. . . Plaintiff's breach of fiduciary duty claim[] [as well as] his claim for violation of 9 V.S.A. §§ 2288 and 2289 relies on alleged actions taken by Jay Peak Management, rather than SSVR. TAC ¶¶ 36-37. Plaintiff expressly acknowledges as much, relying on its use of the blanket phrase: "[t]he Defendants, specifically including SSVR and its wholly owned subsidiary Jay Peak Management[.]" Jay Peak Management, of course, is not a Defendant in this lawsuit. Plaintiff's misguided attempt to impute Jay Peak Management's actions to SSVR through the use of this all-encompassing terminology, which he also employed in his breach of

18

fiduciary duty claim, is no substitute for Jay Peak Management being a
defendant in this litigation. This is no doubt intentional because as Jay
Peak Management is a "receivership entity," the Plaintiff is bound by its
acts.

(Doc. 106-1 at 7 & n.5.)

In prior versions of his Complaint, Plaintiff asserted that Mr. Stenger acted on

behalf of SSVR when he undertook the liability-creating acts in question. Although the

court found this theory of liability "novel[,]" (Doc. 77 at 30), Plaintiff's claims were too

vague at the time to dismiss the claim outright. As Plaintiff's claims have since been

clarified, it is undisputed that JPM undertook many of the actions Plaintiff attributes to

SSVR.[3]

Although Plaintiff alleges that JPM "was a wholly owned subsidiary of SSVR"

(Doc. 96 at 7, ¶ 15), "a parent corporation . . . is not liable for the acts of its

subsidiaries[,]" *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), and liability cannot be

"imposed on a parent corporation for the acts of its wholly-owned subsidiary based solely

on the parent's 'active participation in or control of the subsidiary's board of directors.'"

*Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 277 (D. Vt. 2003)

(quoting *Greene v. Long Island R.R. Co.*, 280 F.3d 224, 234 (2d Cir. 2002)). Plaintiff

tacitly acknowledges this deficiency because he seeks to rectify it by advancing an asset

---

[3] The primary evidence of SSVR's involvement in transferring Phase I and II investor funds is a
cover letter dated June 16, 2008 from SSVR's predecessor, Mont Saint-Sauveur International,
Inc. ("MSSI"), on behalf of MSSI's President and COO, Defendant Hebert, signed by Marielle
Laplante, transmitting a wire transfer agreement to a vice-president at Chittenden Bank which
provides in relevant part as follows:

Re: Jay Peak Hotel Suites, LP

Dear Sir:

Please find enclose[d] the wire transfer agreement duly signed by Louis Dufour
and Louis P. Hebert concerning the $8 million to be transferred to Raymond
James' bank account [account identified].

We thank you for your cooperation.

(Doc. 96-6 at 3.) The attached wire transfer agreement is signed by Defendants Dufour and
Hebert on behalf of Jay Peak Hotel Suites, LP.

stripping theory in his Opposition that is not alleged in the TAC. *See* Doc. 134 at 18 (arguing that the allegations reflect "a classic case of asset stripping"). A complaint cannot be amended in this manner. *See Goldberg v. Saint-Sauveur Valley Resorts, Inc.*, 2018 WL 8370060, at *10 (D. Vt. Dec. 20, 2018) (ruling Plaintiff "may not amend his Second Amended Complaint through statements made in his brief").

Plaintiff next contends that under the STA, SSVR agreed that it would ensure its subsidiaries cooperated in the sale of the Resort. Plaintiff cites no authority for the proposition that this standard contract language provides either a factual or legal basis for disregarding the separate corporate status of SSVR and its subsidiary JPM.[4]

Plaintiff's further suggestion that the court should allow a jury to decide which of three entities (SSVR, JPM, or Jay Peak International) Defendants Dufour's and Hebert's conduct "should attach to" (Doc. 134 at 17) flies in the face of pleading requirements as only one of those entities is before the court. In any event, the TAC contains no allegations supporting corporate veil piercing and therefore the court cannot disregard SSVR's and JPM's separate corporate status on that basis. On this point, the Second Circuit's guidance bears quoting at length:

> "In some instances, the corporate relationship between a parent and its subsidiary [is] sufficiently close . . . to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other. As a general matter, however, a corporate relationship alone is not sufficient to bind a [parent corporation for the actions of its subsidiary]." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). Indeed, "[o]wnership by a parent of all its subsidiary's stock has been held an insufficient reason in and of itself to disregard distinct corporate entities. Actual domination, rather than the opportunity to exercise control, must be shown." *Cf. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) (in reviewing grant of Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction,

---

[4] Under Vermont law, "[a] corporation is a legal construct, limited to the powers given it by the sovereignty that creates it, and generally independent of the individuals who own its stock even when it is owned by a sole shareholder." *Agway, Inc. v. Brooks*, 790 A.2d 438, 441 (Vt. 2001) (citation omitted). "Except in cases where recognition of corporate status would result in fraud or injustice, courts will generally refuse to pierce the corporate veil." *Jack C. Keir, Inc. v. Robinson & Keir P'ship*, 560 A.2d 957, 959 (Vt. 1989).

> stating that "[t]he officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to [personal] jurisdiction").
>
> To overcome "the 'presumption of separateness' afforded to related corporations," Plaintiffs must come forward with "the showing of actual domination required to pierce the corporate veil." *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 22 (2d Cir. 1976) (quoting *Am. Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir. 1974)). Plaintiffs assert that the fraudulent actions taken by Allstate employees were "caused by, known to and ratified by Sears." However, the pleadings are devoid of *any* specific facts or circumstances supporting this assertion. "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); *see also Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) ("'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993))); *Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 706 F. Supp. 221, 229 (S.D.N.Y. 1989) (conclusory allegations of participation in a fraudulent scheme or bad faith will not withstand a Rule 12(b)(6) motion to dismiss).

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (affirming dismissal of plaintiffs' RICO claims because plaintiffs failed to name the "appropriate defendant").

The TAC offers no facts to hold SSVR responsible for the acts of JPM solely on the basis of JPM's status as its wholly owned subsidiary. Although Plaintiff may discover facts and circumstances that will render a corporate veil piercing or asset stripping theory applicable, he has not alleged those facts in the TAC. Accordingly, the court agrees with SSVR that, without more, its liability in this lawsuit cannot be predicated solely on the acts or omissions of JPM. *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015) (holding motion to dismiss properly granted where complaint contained no "plausible allegations . . . that would form any basis for us to pierce [parent company's] corporate veil" or any "extraordinary circumstances" which would allow the court to ignore the subsidiary's separate legal status) (internal quotation marks omitted).

### E.    Standard of Review Governing Plaintiff's Substantive Claims.

All Defendants argue that the TAC fails to state a claim for which relief may be granted.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (internal quotation marks omitted). The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 663, 679 (2009)).  First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678.  Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.  This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

Plaintiff's fraudulent transfer claims must also satisfy the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) which requires a claimant to "plead the circumstances that allegedly constitute fraud 'with particularity,'" *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014), although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "In essence, Rule 9(b) places two further burdens" on a plaintiff alleging fraud; the "first goes to the pleading of the circumstances of the fraud, [and] the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171.  Although "mental states may be pleaded 'generally,' [the plaintiff] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

### F.    Whether Plaintiff's Fiduciary Duty Claim Should Be Dismissed.

SSVR contends it had no duty to Phase I and II investors and thus Plaintiff cannot assert a breach of fiduciary duty claim against it.  Plaintiff counters that the court has already upheld his breach of fiduciary duty claim against SSVR and that he has now pled

that SSVR "took *direct action*, which caused injury to the Phase I and Phase II limited partnerships." (Doc. 134 at 18) (emphasis in original).

Separately, Defendants Dufour and Hebert move to dismiss Plaintiff's claim for breach of fiduciary duty against them, arguing that "all of the acts taken with respect to [the] purported transfers were done by others." (Doc. 120 at 10.) In addition, because Plaintiff asserts that only SSVR received the purchase price for the Resort, SSVR's alleged receipt of fraudulently transferred funds cannot be imputed to them as its corporate officers.

Whether a fiduciary duty exists between parties "is a question of law to be decided by the court." *McGee v. Vt. Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999). "Generally, in order for a fiduciary duty to exist, the relationship between the parties must have ripened into one in which one party was dependent on, and reposed trust and confidence in the other party in the conduct of its affairs." *Ascension Tech. Corp.*, 327 F. Supp. 2d at 276 (internal quotation marks and alterations omitted) (citing *McGee*, 726 A.2d at 44); *see also Cooper v. Cooper*, 783 A.2d 430, 436 (Vt. 2001) ("A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.") (internal quotation marks omitted).

In Vermont, a fiduciary owes a duty to act in its beneficiary's best interest and to refrain from self-dealing. *See J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 10, 188 Vt. 245, 252, 6 A.3d 701, 706 ("The duties of good faith and loyalty require that a [fiduciary] must not allow personal interests to interfere with or supersede the interests of the [beneficiary]."). A corporate director or officer is generally held to be a fiduciary and "must discharge his or her duties: (1) in good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner the director reasonably believes to be in the best interests of the corporation." *Id.* (internal quotation marks omitted). "As part of the fiduciary duty owed to the corporation, a director may not profit at the expense or against the interest of the corporation." *Id.* A director must also not allow his or her personal interests to interfere

with those of the corporation and its shareholders. *Id.*

The TAC alleges that Defendants used JPM to exercise control over the monies collected for the Phase I and Phase II projects (Doc. 96 at 8, ¶ 18) and that once those funds were transferred to Raymond James, "Quiros then used this $15 million of escrowed Phase I and II investor funds as payment to buy the Resort by the transfer of SSVR's shares of Jay Peak" and then "[o]ver the next three months, Quiros paid the remaining balance owed to SSVR, also using Phase I and II investor funds, bringing the total amount paid to and received by SSVR to $2[1],936,030." *Id.* at 9, ¶¶ 24-25 (citing Lama Declaration, Doc. 96-3 at 5, ¶¶ 10, 11).

The TAC further alleges that Defendants Dufour and Hebert, as well as Mr. Stenger, were corporate officers of both SSVR and JPM and in these dual roles exercised control over JPM which, in turn, controlled the Phase I and Phase II limited partnerships. In their capacities as corporate officers, Defendants Dufour and Hebert, as well as Mr. Stenger, were required to "act with the utmost good faith and loyalty for the best interests" of SSVR and JPM. *J.A. Morrissey, Inc.*, 2010 VT 66, at ¶ 11, 188 Vt. at 252, 6 A.3d at 707. Although Defendants are correct that Plaintiff does not allege SSVR had a direct duty to the Phase I and II investors, Plaintiff's claim may reasonably be construed as alleging SSVR aided and abetted JPM's breach of fiduciary duty to those investors. *See Montgomery v. Devoid*, 2006 VT 127, ¶ 22, 181 Vt. 154, 164, 915 A.2d 270, 278 ("[W]e have held that '[a]ll who aid in the commission of a tort by another, or who approve of it after it is done, *if done for their benefit*, are liable in the same manner as they would be if they had done it with their own hands.'"). To the extent Defendants claim that Mr. Stenger, alone, transferred the $15 million to accounts controlled by Mr. Quiros, they ignore Plaintiff's allegations regarding their roles in ensuring those transfers took place.

Similarly, Defendants Dufour's and Hebert's argument that only SSVR profited from the "ultimate receipt of investor funds as payment for the [R]esort" and SSVR is "a corporation with a distinct legal identity separate from that of its officers and shareholders" (Doc. 120 at 11) does not defeat their liability if Plaintiff establishes they

participated in the fiduciary breach. Defendants' further argument, that the SEC
Complaint identifies only Mr. Stenger and Mr. Quiros as malefactors in the use of Phase I
and Phase II investor funds to purchase the Resort, cannot be credited because the SEC
Complaint does not exonerate Defendants and the absence of criminal charges does not
equate with a determination of Defendants' innocence.

Under Vermont law, "officer[s] or agent[s]" of a corporation may be held
independently liable for a corporation's misconduct if they "direct[ed] or participate[d]
actively in the commission of a tortious act or an act from which a tort necessarily
follows or may reasonably be expected to follow[.]" *Prive*, 2010 VT 2, at ¶ 17, 187 Vt.
at 289, 992 A.2d at 1041 (quoting *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406,
408-09 (10th Cir. 1958)). In alleging a breach of fiduciary duty by Defendants, Plaintiff
makes this type of claim:

> 30. The Defendants developed a plan to raise capital for
> improvements to the Resort by establishing Vermont limited partnerships
> and soliciting limited partner investor monies through the federal EB-5
> resident visa program.
>
> 31. The Defendants represented to potential EB-5 investors that
> their funds would be held in bank escrow accounts and used solely for the
> construction of improvements at the Resort.
>
> 32. The Defendants, in taking receipt of such funds in exchange for
> limited partnership shares, and then establishing bank ["]escrow["]
> accounts specifically to hold such funds, had a fiduciary duty to maintain
> and control such funds so that they were utilized solely to build
> improvements to the Resort, strictly according to the offering Memoranda
> and the investors' expectations.
>
> 33. The Defendants breached their fiduciary duty as follows:
>
> a. Taking conscious and affirmative steps to release
> escrowed funds and transfer them into the custody and control of
> Quiros prior to the closing contemplated under the STA;
>
> b. Having improperly relinquished control of investor funds
> to Quiros, consciously taking receipt of these same previously
> escrowed funds as payment for the sale of the shares of Jay Peak to
> QResorts, when they knew that such monies were the property of
> Phase I and II and the investors in Phase I and Phase II;

c. Absconding with such funds and removing them from the
U.S. in order to defeat Phase I and Phase II and Phase I and Phase II
investors'[] right and opportunity to recover such improperly
transferred funds.

34. As a consequence of Defendants' breaches, Plaintiff is entitled
to recover his foreseeable damages arising from such conduct.

(Doc. 96 at 10-11.)

At the motion to dismiss stage, the court assesses only the plausibility of
Plaintiff's claims; it does not "weigh the evidence" nor "evaluate the likelihood" that
Plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir.
2017). The TAC plausibly alleges that Defendants SSVR, Dufour, and Hebert, through
"*active participation or cooperation in*[] a positively wrongful act of commission" by
JPM and Mr. Stenger, caused Phase I and II investors an injury directly and proximately
caused by a fiduciary breach which they aided and abetted. *Prive*, 2010 VT 2, at ¶ 17,
187 Vt. at 289, 992 A.2d at 1041 (quoting *Lobato*, 261 F.2d at 408-09). For that reason,
Defendants' motions to dismiss Plaintiff's breach of fiduciary duty claim (Count One)
must be DENIED.

## G. Whether Plaintiff's Claims Under the VFTA Should Be Dismissed.

In Count Two of the TAC, Plaintiff alleges Defendants violated 9 V.S.A. §§ 2288
and 2289 of the VFTA because Defendants:

36. . . . specifically including SSVR and its wholly owned subsidiary, Jay
Peak Management, upon taking receipt and control of the Phase I and II
investor monies, were acting in a capacity as debtors with respect to those
investors, who were their creditors, to the extent of the tender, control and
transfer of such investor monies.

37. The Defendants, specifically including SSVR and its wholly owned
subsidiary, Jay Peak Management, upon taking receipt and control of the
Phase I and II investor monies, transferred those investor funds to Quiros,
with the actual intent to hinder, delay or defraud the investors, which was in
violation of 9 V.S.A. § 2288(a)(1); and/or transferred those investor funds
without receiving a reasonably equivalent value in exchange for the
transfer, rendering Phase I and II insolvent as a result, which was in
violation of 9 V.S.A. § 2289(a).

38. Defendants took the Phase I and II investor funds as transferees or

persons for whose benefit the transfer was made, rendering the transfer void or voidable, and permitting the Plaintiff, herein, as creditor, to recover judgment in the total amount of $21,936,030, pursuant to 9 V.S.A. § 2291 and § 2292.

(Doc. 96 at 12) (citation omitted).

Section 2288 of the VFTA renders a transfer or obligation voidable as to a present or future creditor as follows:

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

9 V.S.A. § 2288.

Section 2289 renders a transfer or obligation voidable in the following circumstances:

(a) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

27

(c) Subject to subsection 2286(b) of this title, a creditor making a claim for relief under subsection (a) or (b) of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

9 V.S.A. § 2289.

Although Plaintiff's claims under §§ 2288 and 2289 as set forth in Count Two are conclusory, he incorporates his prior factual allegations by reference and attaches the Declaration of Michelle Lama as Exhibit 3 to the TAC (the "Lama Declaration"), which is considerably more detailed.

### H. Whether Plaintiff's VFTA Claims Against Defendants Dufour and Hebert are Barred by the Statute of Limitations.

9 V.S.A. § 2293, entitled "Extinguishment of claim for relief[,]" provides the following statute of limitations for VFTA claims:

A claim for relief with respect to a transfer or obligation under this chapter is extinguished unless action is brought:

(1)   under subdivision 2288(a)(1) of this title not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2)   under subdivision 2288(a)(2) or subsection 2289(a) of this title not later than four years after the transfer was made or the obligation was incurred;

(3)   under subsection 2289(b) of this title, not later than one year after the transfer was made or the obligation was incurred[.]

Defendants Dufour and Hebert argue that Plaintiff's VFTA claims must be dismissed because the claims against them were brought more than four years after the transfers challenged pursuant to § 2289(a). With regard to Plaintiff's claims under § 2288(a)(1), they contend that Plaintiff discovered the basis of his claim more than four years before the filing of the TAC.

Plaintiff responds that the court already determined that "statute of limitations issues, and more specifically tolling related to 'discovery', are best left for further factual development[.]" (Doc. 134 at 13.) That ruling did not apply to Defendants Dufour and Hebert, who had not yet been joined as defendants. In the alternative, Plaintiff argues

that his VFTA claims against Defendants Dufour and Hebert: (1) relate back to the date of his original Complaint, (2) the statute of limitations for his VFTA claim under § 2289(a) is tolled by the doctrine of adverse domination, or (3) the discovery rule applies to his claims under § 2288(a)(1) and renders that claim timely.

As a threshold issue, the court rejects Plaintiff's argument that the addition of Defendants Dufour and Hebert relates back to the filing of Plaintiff's Complaint filed on April 7, 2017. Under Fed. R. Civ. P. 15(c)(1), a pleading relates back to the original date of filing when: (A) the applicable statute of limitations allows relation back, (B) the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out[] . . . in the original pleading[,]" or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the [ninety-day] period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Assuming *arguendo* that the claims against Defendants Dufour and Hebert arose from the conduct alleged in the original Complaint, Plaintiff does not assert he was mistaken regarding the proper party's identity. The original Complaint references both Defendants Dufour and Hebert, alleges that they were SSVR's corporate officers, and quotes Mr. Quiros's deposition testimony from the SEC Action in which he states that they and Mr. Stenger opened an account at Raymond James for the purpose of transferring funds to him. In waiting until the TAC, Plaintiff made "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties[,]" which is "the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010); *see also Giannini v. City of N.Y.*, 700 F. Supp. 202, 205 n.4 (S.D.N.Y. 1988) (holding that a plaintiff "was not laboring under a mistake of identity when she filed her original complaint" where the newly added defendants were "mentioned in the body of

plaintiff's complaint" and thus "defendants more logically must have assumed that plaintiff had intentionally, and not mistakenly, refrained from bringing suit against them"). Plaintiff's claims against Defendants Dufour and Hebert therefore do not relate back to his original Complaint. Plaintiff's argument regarding the statute of limitations insofar as it applies to his § 2289(a) claim is equally unavailing.

The statute of limitations may be raised "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). "A statute of limitations provides an affirmative defense, and the burden is on the defendant to establish when a federal claim accrues." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011). "[U]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 354 (D. Vt. 2010) (quoting *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005)).

Plaintiff's VFTA claim brought pursuant to § 2289(a) must be brought "not later than four years after the transfer was made or the obligation was incurred[.]" 9 V.S.A. § 2293(2). In a non-precedential opinion, the Second Circuit concluded that 9 V.S.A. § 2293(2) imposes an "unqualified four-year filing rule" for claims "maintained under § 2289(a)[.]" *Astra USA, Inc. v. Bildman*, 375 F. App'x 129, 133 (2d Cir. 2010) (applying Vermont law and holding that fraudulent transfer claims brought in October 2007 pursuant to 9 V.S.A. § 2289(a) were time barred because the transfer occurred in July 2002). The Vermont Supreme Court has never held to the contrary.

The Vermont Legislature demonstrated that it knew how to extend a statute of limitations on equitable grounds by imposing a discovery rule for certain VFTA claims and not for others. *See Pike v. Chuck's Willoughby Pub, Inc.*, 2006 VT 54, ¶ 16, 180 Vt. 25, 32, 904 A.2d 1133, 1138 (observing that "the discovery rule applies whenever a limitations period does not set forth a determinable fact that triggers accrual" but it does not apply when a statute "runs from a date certain"). No reasonable interpretation of § 2293(2) authorizes a discovery rule or any other basis for finding anything but a four-year unqualified bar from the date of transfer or obligation. Although Plaintiff invokes

the doctrine of adverse domination, that doctrine clearly does not apply.

"Adverse domination is an equitable doctrine which operates to toll the statute of limitations for a corporation's claims against its officers or directors when the persons in charge of the corporation cannot be expected to pursue claims adverse to their own interests." *In re Payroll Express Corp.*, 186 F.3d 196, 205 (2d Cir. 1999). The doctrine does not apply if the forum's courts have not adopted it. *See id.* at 206 (noting "New Jersey has not adopted the adverse domination theory" in declining to apply it); *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 227 (5th Cir. 1993) (declining to apply this "very narrow doctrine" where the plaintiff "has not produced any cases from Texas or this Court" that applied adverse domination in the context at issue). Because Vermont has not adopted the doctrine of adverse domination, the court must predict whether it would do so. The Second Circuit has explained how this inquiry should be undertaken:

> In addressing unsettled areas of state law, we are mindful that "[o]ur role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." Instead, we must "carefully predict how the state's highest court would resolve the uncertaint[ies]" that we have identified. "In making this prediction, we give the fullest weight to pronouncements of the state's highest court, here the Vermont Supreme Court, while giving proper regard to relevant rulings of the state's lower courts. We may also consider decisions in other jurisdictions on the same or analogous issues."

*Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005) (citations and internal quotation marks omitted).

The Vermont Supreme Court has never indicated that it would adopt the doctrine of adverse domination and it appears especially unlikely to do so where the plain language of a statute of limitation dictates otherwise. *See Flint v. Dep't of Labor*, 2017 VT 89, ¶ 5, 205 Vt. 558, 562, 177 A.3d 1080, 1082 ("If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language."). In any event, the doctrine of adverse domination is generally not applied in the absence of fraudulent concealment, which Plaintiff does not allege in the TAC. *See* George L. Blum,

31

*Application of Doctrine of Adverse Domination*, 13 A.L.R. 7th Art. 3 § 3 (2016) ("The doctrine of adverse domination, a rebuttable presumption that a corporate plaintiff cannot have notice of wrongdoing by directors when those directors are in control of the corporation, only applies when a majority of board members are implicated in concealment").

In the Second Circuit, the case law does not support the application of adverse domination unless state law clearly indicates its application and the plaintiff's allegations of fraudulent concealment are well beyond conclusory. For example, in *In re Tronox Inc.*, 429 Bankr. 73 (Bankr. S.D.N.Y. Mar. 31, 2010), a bankruptcy court applied Oklahoma law and concluded that because the Oklahoma Supreme Court had recognized the doctrine of adverse domination with certain limitations, the doctrine might in some circumstances apply. It nonetheless dismissed plaintiffs' claim because the plaintiffs' "relatively bare-bones allegations . . . are inadequate[]" and because the plaintiffs "also have not adequately pled the elements of fraudulent concealment, particularly their due diligence in uncovering the wrongful conduct and taking action to obtain redress, and they have not clearly specified the breach of duty." *Id.* at 108.

Here, an unambiguous statute of limitations forecloses any claim of adverse domination, and Plaintiff does not allege that Defendants Dufour and Hebert fraudulently concealed their alleged wrongdoing so that Plaintiff, exercising due diligence, could not file a timely VFTA claim. Instead, the TAC alleges that in June 2008, in advance of the sale of the Resort, Phase I and II funds were fraudulently transferred without the knowledge and consent of the Phase I and II investors. As a result, Plaintiff's VFTA claim against Defendants Dufour and Hebert pursuant to § 2289(a) expired in June 2012, long before the TAC was filed. Plaintiff's VFTA claim under 9 V.S.A. § 2289(a) against Defendants Dufour and Hebert is therefore DISMISSED.

Defendants Dufour's and Hebert's argument that Plaintiff's VFTA claim under § 2288(a)(1) is also barred by the applicable statute of limitations because Plaintiff could, should, and did discover it earlier is less easily resolved because the court must make a determination based on the TAC.

Plaintiff's § 2288(a) claim is subject to a four-year statute of limitations from the date of the transfer or, "if later, not later than one year after the transfer . . . was or could reasonably have been discovered by the claimant[.]" 9 V.S.A. § 2293(1). The Vermont Supreme Court has held that "the statute of limitation[s] begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting [the] inquiry." *Jadallah v. Town of Fairfax*, 2018 VT 34, ¶ 17, 207 Vt. 413, 420, 186 A.3d 1111, 1118 (internal quotation marks omitted); *see also Earle v. State*, 743 A.2d 1101, 1108 (Vt. 1999) ("The date of accrual under the statute of limitations seeks to identify the point at which a plaintiff should have discovered the basic elements of a cause of action: an injury caused by the negligence or breach of duty of a particular defendant"). It has, however, cautioned that the discovery rule is often dependent upon a finding of fact or at least upon undisputed facts. *See Pike*, 2006 VT 54, at ¶¶ 1, 18, 180 Vt. at 27, 33, 904 A.2d at 1134, 1139 ("We do not decide whether application of the discovery rule in this case brings plaintiffs' action within the limitations period, as this is a factual issue that must be developed in the trial court in the first instance" because "[d]etermination of the date of accrual under the discovery rule is a factual issue that generally should be decided by the jury.").[5]

Defendants Dufour and Hebert argue that the SEC Complaint and the Lama Declaration dated March 3, 2016 unequivocally put Plaintiff on notice of the transfer of funds from the Phase I and II investor accounts to Raymond James. Plaintiff, who was appointed Receiver in the SEC Action on April 13, 2016, was thus arguably aware that Defendants Dufour and Hebert "may have been liable for [] [P]laintiff's injuries." *Rodrigue v. VALCO Enters., Inc.*, 726 A.2d 61, 63 (Vt. 1999); *see also In re Zyprexa*

---

[5] Although Defendants Dufour and Hebert rely on *Blesh v. Johnson*, 2006 WL 5838212 (Vt. Aug. 1, 2006), an unpublished entry order, the dismissal of a fraudulent conveyance claim in that case was granted because the defendant-wife did "not dispute the court's finding that the property was purchased in 1989, that wife received an investigative report disclosing the purchase on September 16, 1996, and that she did not file the action until June 2004, more than seven years after the discovery, and well beyond the limitations period." *Id.* at *1.

*Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 536 (E.D.N.Y. 2008) ("Lawsuits alleging similar fraud . . . serve as a public event for the purpose of putting a plaintiff on inquiry notice."). In a close call like the present case, the court finds the Court of Appeals for the Third Circuit's approach in *Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) instructive:

> In order to determine when the statute should begin to run, the finder of fact focuses on whether the plaintiff is reasonably diligent in discovering his injury. Pursuant to the application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors. [O]nly where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law.

> Generally, the plaintiff bears the burden of showing that the discovery rule tolls the statute of limitations. However, while a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome the affirmative defense. This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

> This court has stated, in the context of the discovery rule, that when the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal.

*Id.* at 251-52 (citations and internal quotation marks omitted).

Because the court cannot rule as a matter of law that Plaintiff's VFTA claim against Defendants Dufour and Hebert pursuant to § 2288(a) is time barred, the court DENIES Defendants Dufour's and Hebert's motion to dismiss on that basis.

## I. Whether Plaintiff Plausibly Alleges VFTA Claims.

Defendants challenge Plaintiff's VFTA claims for failure to state a claim, asserting that no "transfer" has been plausibly alleged; SSVR was a "'subsequent transferee' of Phase I and Phase II property, having allegedly received the funds as a second or perhaps third generation transferee"; and

> Plaintiff has not identified any existing creditors of the Phase I and Phase II partnerships at the time of the transfers, alleging only that the transfers

34

were fraudulent as to limited partners, who by definition are not creditors
and most of whom did not even exist at the time of the alleged transfers.

(Doc. 106-1 at 21.) In addition, Defendants argue that Plaintiff, who stands in the shoes
of JPM, cannot recover for his own allegedly fraudulent conveyance. SSVR
characterizes Plaintiff's VFTA claims against it as a "thinly disguised attempt by Plaintiff
to recover the purchase price for Jay Peak while also keeping Jay Peak[.]" *Id.* at n.14.

Pursuant to 9 V.S.A. § 2288(a)(1), "[a] transfer made or obligation incurred by a
debtor is voidable as to a creditor[] . . . if the debtor made the transfer or incurred the
obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]"
A creditor making a fraudulent transfer claim bears "the burden of proving the elements
of the claim for relief by a preponderance of the evidence." *Id.* at §§ 2288(c), 2289(c).
The statute defines a "[c]reditor" as "a person who has a claim[]" and "[d]ebtor" as "a
person who is liable on a claim." *Id.* at § 2285(4), (6). A "[c]laim . . . means a right to
payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,
contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or
unsecured." *Id.* at § 2285(3).

"The determination of a defendant's fraudulent intent is a fact-intensive inquiry
and is nearly always proven from surrounding circumstances rather than direct evidence."
*In re Montagne*, 417 B.R. 232, 238 (Bankr. D. Vt. 2009) (internal quotation marks
omitted). In deciding whether there is an "actual intent to hinder, delay or defraud[,]"
courts consider the eleven factors listed in § 2288(b), referred to as the "badges of fraud."
*Id.* at 237-38 (internal quotation marks omitted).[6] "When these badges of fraud are

---

[6] The "badges of fraud" include:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession
> or control of the property transferred after the transfer; (3) the transfer or
> obligation was disclosed or concealed; (4) before the transfer was made or
> obligation was incurred, the debtor had been sued or threatened with suit; (5) the
> transfer was of substantially all the debtor's assets; (6) the debtor absconded;
> (7) the debtor removed or concealed assets; (8) the value of the consideration
> received by the debtor was reasonably equivalent to the value of the asset
> transferred or the amount of the obligation incurred; (9) the debtor was insolvent
> or became insolvent shortly after the transfer was made or the obligation was

present in sufficient number, it may give rise to an inference or presumption of fraud."
*Id.* at 238 (internal quotation marks omitted).

The TAC alleges:

> Defendants, specifically including SSVR and its wholly owned subsidiary, Jay Peak Management, upon taking receipt and control of the Phase I and II investor monies, were acting in a capacity as debtors with respect to those investors, who were their creditors, to the extent of the tender, control and transfer of such investor monies.

(Doc. 96 at 12, ¶ 36.) Although the labels do not neatly fit, by alleging that SSVR, acting through JPM, is liable to Phase I and II investors as a result of allegedly taking their funds and transferring them beyond their control without consideration and with the intent to defeat their claims to those funds, Plaintiff plausibly alleges that SSVR was a "debtor" and the Phase I and II investors were its "creditors[.]" Plaintiff further plausibly alleges that when SSVR allegedly caused JPM to transfer those funds to Mr. Quiros with no benefit accruing to the Phase I and II investors and with the intent that SSVR would ultimately receive the benefit of the transfer, SSVR directly participated in a fraudulent transfer and may be held liable as a result.[7] These allegations, accepted as true, are sufficient to allege a § 2288(a)(1) claim against SSVR.

Although SSVR is correct that Plaintiff occupies the somewhat unusual position of representing the interests of both alleged "creditors" (Phase I and II investors) and the "transferor" (JPM), the court will not at this time find that the dual role is dispositive. If

---

> incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

9 V.S.A. §§ 2288(b)(1)-(11).

[7] Although SSVR asks the court to find that the Lama Declaration demonstrates (1) that no "transfer" occurred within the meaning of the statute as funds were only transferred between partnership accounts without a change in the account holder and (2) that SSVR is only a "'subsequent transferee[,]'" (Doc. 106-1 at 21) both arguments are unaided by the Lama Declaration's further assertion that "MSSI transferred . . . $11 million of Phase I investor funds in the MSSI Jay Peak Phase I Investor Account at Raymond James to the Quiros Jay Peak Phase I Investor Account at Raymond James[.]" (Doc. 96-3 at 8, ¶ 19); *see also id.* at 10, ¶ 24 (stating the same regarding $7 million in Phase II funds).

JPM were merely the conduit by which SSVR perpetrated the alleged fraudulent conveyance, JPM's role in the transfer may be inconsequential. In addition, Plaintiff attaches Exhibit 6 to the TAC, which is a copy of the June 16, 2008 transfer instructions from Defendant Hebert as President and COO of SSVR, not JPM, instructing that $8 million be transferred from the Phase I account at Chittenden Bank to a Phase I account at Raymond James. The Lama Declaration further details SSVR's receipt of Phase I and Phase II funds through its TD Canada Trust Bank account.

The fact that SSVR ultimately received the funds after they had been transferred several times and is thus a "subsequent transferee" is also not grounds for dismissal if the fraudulent scheme routed them through various intermediaries before they were ultimately received by SSVR. To the extent a transfer is voidable, a "judgment may be entered against[] the first transferee of the asset *or the person for whose benefit the transfer was made*[.]" 9 V.S.A. § 2292(b)(1)(A) (emphasis supplied); *see also In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005) (citing Second Circuit precedent for "collapsing of contemporaneous transactions" whereby "multiple transactions may be collapsed and treated as phases of [a] single transaction where (1) consideration received in exchange for [the] initial transfer of [the] debtor's property is reconveyed by [the] debtor for less than fair consideration or with fraudulent intent, and (2) [the] transferee of [the] initial conveyance has actual or constructive knowledge of [the] scheme") (internal quotation marks omitted); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (observing that the Second Circuit "will not turn a blind eye to the reality that" two conveyances "constituted a single, integrated transaction").

Because neither the Vermont Legislature nor the Vermont Supreme Court has fleshed out the contours of a § 2288(a)(1) claim, a novel claim like Plaintiff's claim against SSVR is better assessed in the context of a factual record. *See Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2016 WL 7176586, at *14 (D. Vt. Dec. 7, 2016) ("At the pleading stage, dismissal of a novel claim without the benefit of discovery and a factual record is not warranted") (citing *Adato v. Kagan*, 599 F.2d 1111,

1117 (2d Cir. 1979)). The court therefore DENIES SSVR's motion to dismiss Plaintiff's § 2288(a)(1) claim.

Defendants Dufour and Hebert present a more persuasive argument for dismissal of Plaintiff's § 2288(a)(1) claim against them. Phase I and II investors were never their "creditors" and other than a general reference to "Defendants" there is no allegation that they personally transferred any property in their individual capacities or acted with the "actual intent to hinder, delay or defraud" Phase I and Phase II investors. *See In re Sharp Int'l Corp.*, 403 F.3d at 57 ("As 'actual intent to hinder, delay, or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)) (citation omitted). The TAC also fails to allege that Defendants Dufour and Hebert personally received the benefits of any transferred funds. Although discovery may provide a basis of a claim against Defendants Dufour and Hebert under § 2288(a)(1), it has not been alleged in the TAC.

Because Plaintiff does not plausibly allege a § 2288(a)(1) claim against Defendants Dufour and Hebert, their motion to dismiss that claim is GRANTED and Count One of the TAC against them is DISMISSED.

### J.    Whether Plaintiff's § 2289(a) Claim Should be Dismissed.

SSVR argues that Plaintiff has not adequately alleged a plausible claim for relief under 9 V.S.A. § 2289(a) because the TAC does not allege that Plaintiff's claim on behalf of the Phase I and II investors "arose before the transfer was made or the obligation was incurred[,]" nor does it assert a claim that SSVR or JPM were "insolvent at the time" of the transfer or "became insolvent as a result of the transfer or obligation" as required by 9 V.S.A. § 2289(a). Under 9 V.S.A. § 2289(a),

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer[.]

The TAC asserts that it was the Phase I and II partnerships, in their status as *creditors*, who became insolvent as a result of the transfer to Mr. Quiros. *See* Doc. 96 at

38

12, ¶¶ 36-37 ("The Defendants[] . . . upon taking receipt and control of Phase I and II investor monies[] . . . who were their creditors[] . . . transferred those investor funds [to Mr. Quiros] without receiving a reasonably equivalent value in exchange for the transfer, rendering Phase I and II insolvent as a result[.]"). This may be a fraudulent conveyance, but it is not actionable under 9 V.S.A. § 2289(a). The TAC's reference to *In re Montagne*, 417 B.R. 232, does not alter that conclusion. In that case, the bankruptcy court analyzed a fraudulent conveyance claim at the summary judgment stage, borrowed from Connecticut law because there was a dearth of Vermont law, and ultimately concluded that the lender's claim against the transferee could not be decided until its claim against the transferor had been established.

Accepting the facts pled as true, the TAC does not allege either the essential elements of a § 2289(a) claim or sufficient facts to give rise to a plausible claim for relief consistent with Fed. R. Civ. P. 9(b)'s pleading standards. *See United States ex rel. Joseph v. Brattleboro Retreat*, 2014 WL 3908432, at *7 (D. Vt. Aug. 10, 2014). SSVR's motion to dismiss Plaintiff's § 2289(a) VFTA claim against it is therefore GRANTED and that claim as set forth in Count Two of the TAC is DISMISSED.

## K.    Whether Plaintiff Plausibly Alleges Damages.

Defendants challenge the availability, adequacy, and plausibility of the damages set forth in the TAC and ask that Plaintiff's claims be dismissed in their entirety for failure to state a plausible claim for relief. As this court has previously ruled, Plaintiff's failure to plead damages with specificity does not warrant dismissal "provided he alleges a factual basis for recovery." (Doc. 77 at 21.) The Vermont Supreme Court has explained:

> In tort, compensation is provided, as nearly as possible, to restore a person damaged to the position he would have been in had the wrong not been committed. While an exact amount may be difficult to ascertain, a tortfeasor is assessed for damages which directly or proximately result from the wrong committed.

*My Sister's Place v. City of Burlington*, 433 A.2d 275, 281 (Vt. 1981) (citation omitted).

Upon Defendants' request, the TAC now alleges Plaintiff's damages with greater

specificity. Defendants nonetheless argue that in order to survive a motion to dismiss, Plaintiff must "allege damages that 'necessarily and immediately' resulted from [their] activities." (Doc. 106-1 at 12; Doc. 120 at 20) (quoting *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52-53 (2d Cir. 2015)). In *Anderson*, the Second Circuit held that a plaintiff alleging a tort "may not recover when 'it is uncertain whether such damages resulted necessarily and immediately from the breach complained of.'" *Anderson*, 805 F.3d at 52 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562-63 (1931)). However, once the plaintiff alleges that the "claimed damages are the certain result of the wrong[,] . . . the defendant then bears the risk of uncertainty as to the amount of damages." *Id.* at 53 (citation and internal quotation marks omitted).

In the TAC, Plaintiff alleges that Phase I investors have lost $50,000 each and Phase II investors have lost $550,000 each, and further asserts that these losses are the result of Defendants' breach of a fiduciary duty and their violations of the VFTA. Whether Plaintiff is likely to recover these damages would require the court to weigh the evidence and predict its outcome—tasks the court does not engage in on a motion to dismiss. As this case progresses, Plaintiff will be required to satisfy a more exacting standard for his claimed damages. *See Gettis v. Green Mountain Econ. Dev. Corp.*, 2005 VT 117, ¶¶ 30, 33, 179 Vt. 117, 128-29, 892 A.2d 162, 171-72 (holding that "the [trial] court [properly] concluded that plaintiffs were unable to show a causal link between their legal theories and their injury, and granted summary judgment on that basis[]" because plaintiffs failed to show "reasonable certainty or a reasonable probability that the apprehended future consequences will ensue from the original injury[]" and "[c]onsequences which are contingent, speculative, or merely possible [are not included]") (internal quotation marks omitted).

SSVR further argues that Plaintiff may not assert damages for persons who invested after the June 2008 transfer of Phase I and Phase II limited partnership interests because of the intervening fraudulent actions of Mr. Quiros, Mr. Stenger, and Raymond James and because "[p]roximate cause requires a causal connection between the act for

which defendant is responsible and the resulting flow of injurious consequences." *Lavoie v. Pac. Press & Shear Co., a Div. of Canron Corp.*, 975 F.2d 48, 57 (2d Cir. 1992) (citing *Rivers v. State*, 328 A.2d 398, 400 (Vt. 1974)); *Estate of Sumner v. Dep't of Soc. & Rehab. Servs.*, 649 A.2d 1034, 1036 (Vt. 1994) (holding that causation is not established if the "only immediate and proximate cause of plaintiff's damages was the independent, intentional criminal act" of a third party). Due to its fact-intensive nature, "[p]roximate cause is ordinarily an issue to be resolved by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Roberts v. State*, 514 A.2d 694, 696 (Vt. 1986) (internal quotation marks omitted); *see also Bacon v. United States*, 104 F. App'x 208, 209 (2d Cir. 2004) (summary order) ("Typically, a jury decides such issues of causation.").

"The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Kane v. Lamothe*, 2007 VT 91, ¶ 14, 182 Vt. 241, 249, 936 A.2d 1303, 1310 (internal quotation marks omitted). At the pleading stage, the court cannot rule as a matter of law that Plaintiff cannot and will not recover any of the damages he alleges. The court therefore DENIES SSVR's motion to dismiss Plaintiff's claims on the ground that Plaintiff has not adequately pled damages. Because the court finds that Plaintiff has sufficiently alleged damages, the court does not reach his setoff argument.[8]

## L. Whether Plaintiff Plausibly Alleges a Claim for Exemplary Damages.

In Count Three of the TAC, Plaintiff alleges a claim for exemplary damages. "[P]unitive damages are a remedy and not a separate cause of action." *Eldridge v.*

---

[8] In opposing dismissal, Plaintiff argues, in the alternative, he is entitled to restitution damages under 14A V.S.A. § 1002. Because Plaintiff did not assert this claim in the TAC, the court may not consider it. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Russo v. Navient Sols., LLC*, 2018 WL 1474354, at *2 n.3 (D. Vt. Mar. 23, 2018) ("It is well-settled that a plaintiff cannot amend [a] complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.") (alteration in original) (internal quotation marks omitted). He also addresses the availability of a set-off at length in his brief, however, the TAC does not contain allegations regarding a set-off.

41

*Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013); *see also Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 350 n.1 (N.D.N.Y. 2008), *aff'd*, 331 F. App'x 894 (2d Cir. 2009) ("[P]laintiffs' request for punitive damages is a form of relief sought, not a separate cause of action."). A claim for exemplary damages may nonetheless be the subject of a Rule 12(b)(6) motion for failure to state a claim on the grounds that this type of damages is not available as a matter of law or because the grounds for such damages have not been plausibly pled. *See Carvel Corp. v. Noonan*, 350 F.3d 6, 23-26 (2d Cir. 2003). Vermont law recognizes that whether exemplary damages are recoverable may be a question of law for the court. *See Beaudoin on behalf of New England Expedition Ltd. P'ship II v. Feldman*, 2018 VT 83, ¶ 17, 208 Vt. 169, 177-78, 196 A.3d 768, 775; *see also Leblanc v. United Parcel Serv., Inc.*, 1996 WL 192011, at *5-6 (D. Vt. Apr. 2, 1996).

To plead a claim for punitive damages under Vermont law, a plaintiff must allege "wrongful conduct that is outrageously reprehensible[]" and "malice, defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Fly Fish Vt., Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18, 187 Vt. 541, 548-49, 996 A.2d 1167, 1173. Punitive damages may be obtained from a corporation if the plaintiff can prove a malicious act was committed by "the governing officers of the corporation or one lawfully exercising their authority[.]" *Shortle v. Cent. Vt. Pub. Serv. Corp.*, 399 A.2d 517, 518 (Vt. 1979). While "the prerequisites for imposing punitive damages . . . are demanding, . . . when defendants have been found liable for common-law fraud, it is proper to put the issue of punitive damages to the jury." *Follo v. Florindo*, 2009 VT 11, ¶ 45, 185 Vt. 390, 411, 970 A.2d 1230, 1245.

Defendants contend that Plaintiff "relies on his threadbare and unexplained allegations" that they acted in bad faith and engaged in fraud, and thus fails to plead that they engaged in outrageous conduct. (Doc. 106-1 at 26; Doc. 120 at 16.) Under Vermont law, "malice may arise from deliberate and outrageous conduct aimed at securing financial gain or some other advantage at another's expense, even if the motivation underlying the outrageous conduct is to benefit oneself rather than harm another."

42

*DeYoung v. Ruggiero*, 2009 VT 9, ¶ 27, 185 Vt. 267, 279, 971 A.2d 627, 636; *see also J.A. Morrissey, Inc.*, 2010 VT 66, at ¶ 34, 188 Vt. at 261, 6 A.3d at 713 ("Malice may be found where one seeks to profit, through conduct that is deliberate and outrageous, at the expense of another even where the conduct is intended to benefit oneself.").

The Vermont Supreme Court has "upheld punitive damage awards on proof of patently outrageous misconduct that also included . . . an element of bad motive by definition[.]" *Fly Fish Vt., Inc.*, 2010 VT 33, at ¶ 22, 187 Vt. at 551, 996 A.2d at 1175. Fraud and breach of fiduciary duty premised on self-dealing fall within this category. *See Follo*, 2009 VT 11, at ¶ 45, 185 Vt. at 412, 970 A.2d at 1245 ("[A]ctual fraud is accomplished with an evil intent, and if a jury finds that actual fraud was committed, an injured party is entitled to have the jury consider punitive or exemplary damages."); *DeYoung*, 2009 VT 9, at ¶ 29, 185 Vt. at 280, 971 A.2d at 637 (holding that punitive damages were available from a defendant who "acknowledges stealing plaintiffs' money and then lying to them about the theft for years notwithstanding his fiduciary duty to them").

Although Plaintiff's exemplary damages claim is arguably conclusory, it is supported by more detailed allegations that it incorporates by reference. At this nascent phase of the litigation, the court cannot find as a matter of law that a claim for exemplary damages has not been plausibly pled based upon Plaintiff's claim that SSVR aided and abetted and directly participated in a breach of fiduciary duty with the knowledge and intent of depriving Phase I and II investors of any recourse and for the purpose of benefiting itself through the receipt of the purchase price of the Resort. *See id.* (finding that a defendant's motive "to enrich himself and promote the interests of his company[] . . . in and of itself demonstrates a bad motive").

"In light of the relationship between the parties and the trust that was placed in [Defendants Dufour and Hebert] as [] important member[s] of a small company," Plaintiff has also adequately pled that their "actions meet the standard of intentional and sufficiently wrongful conduct necessary to sustain punitive damages." *J.A. Morrissey, Inc.*, 2010 VT 66, at ¶ 35, 188 Vt. at 261, 6 A.3d at 713. As governing officers of SSVR

43

and JPM, their conduct may be imputed to SSVR in certain circumstances; likewise, SSVR's and JPM's may be imputed to them. *See Shortle*, 399 A.2d at 518 (holding a corporation may be liable for the "malicious or unlawful act" of "governing officers of the corporation" and punitive damages may be available against corporate officers where the officers committed the malicious or unlawful act or the evidence "clearly show[s] that the governing officers either directed the act [of a servant or agent of the corporation], participated in it, or subsequently ratified it"); *Staruski v. Cont'l Tel. Co. of Vt.*, 581 A.2d 266, 272-73 (Vt. 1990) ("Under the *Shortle* test, any malice on the part of Hollinger as a 'governing officer' may be imputed to the corporation."). Defendants' motion to dismiss Plaintiff's claim for exemplary damages as set forth in Count Three is therefore DENIED.

## M. Whether Plaintiff Plausibly Alleges a Claim for a Constructive Trust.

Defendants argue that Plaintiff's claim for a constructive trust must be dismissed because a constructive trust is an equitable remedy, not a claim for relief, and because Plaintiff's constructive trust claim is merely a renewal of his dismissed unjust enrichment claim. Plaintiff responds that a constructive trust applies to fraudulent transfers and a breach of fiduciary duty may be imposed in response and the Receivership Order affirmatively grants him the authority to recover misappropriated funds in equity and to seek a constructive trust.

Generally, "a constructive trust is an equitable remedy." *Savage v. Walker*, 2009 VT 8, ¶ 8, 185 Vt. 603, 605, 969 A.2d 121, 124. However, "[t]he circumstances under which a court may impose a constructive trust are broad and highly contextual." *Shattuck v. Peck*, 2013 VT 1, ¶ 11, 193 Vt. 123, 127, 70 A.3d 922, 925. "A court may impose a constructive trust when a party obtains some benefit that they cannot, in good conscience, retain." *Weed v. Weed*, 2008 VT 121, ¶ 17, 185 Vt. 83, 90, 968 A.2d 310, 315.

The Vermont Supreme Court has not foreclosed the possibility that a court may impose a constructive trust in actions other than a claim for unjust enrichment. For example, the VFTA allows courts to appoint "a receiver to take charge of the asset transferred or of other property of the transferee[.]" 9 V.S.A. § 2291(a)(3)(B). A

constructive trust is generally "implied whenever the circumstances are such[] that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing." *Legault v. Legault*, 459 A.2d 980, 983 (Vt. 1983) (internal quotation marks omitted); *cf. ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 996 (2d Cir. 1983) (holding that a constructive trust was a "proper remedy" for breach of fiduciary duty under New York law).

Plaintiff alleges that Defendants participated in a breach of fiduciary duty with an intent to defraud Phase I and Phase II investors and should not be allowed to retain the benefits of that breach. *See In re M & L Bus. Mach. Co.*, 59 F.3d 1078, 1081 (10th Cir. 1995) ("[T]he recipient of property obtained by fraud does not actually acquire title to it."); *Brownell v. Talcott*, 47 Vt. 243, 247 (Vt. 1875) ("One who obtains goods by fraud . . . cannot make a good title by showing that he paid part of the value of the property.") (internal quotation marks omitted). Although Defendants are correct that the court dismissed Plaintiff's claim for unjust enrichment because Plaintiff's "attempt to obtain the purchase price of Jay Peak, while simultaneously owning Jay Peak, would result in a double recovery[,]" (Doc. 106-1 at 24) and that concern remains in the TAC, Plaintiff proposes an elaborate system for ensuring that no double recovery results. After the Resort is sold, Plaintiff seeks to disburse the funds derived from its purchase price in a constructive trust if "there remain funds still necessary to make Phase I and II investor[s] whole, including any costs, interest and attorneys' fees awarded[.]" (Doc. 96 at 15, ¶ 53.) Any remaining "monies may and shall be refunded to the Defendants." *Id.* at 15, ¶ 54. Although Defendants challenge Plaintiff's proposal as dependent on future, contingent, and speculative events, the court cannot find that a constructive trust is either unavailable as a matter of law or insufficiently pled in the facts and circumstances of this case.

For the foregoing reasons, the court DENIES Defendants' motions to dismiss Plaintiff's request for a constructive trust as set forth in Count Four of the TAC.

### N. Whether Plaintiff's Claims are Barred by Judicial Estoppel.

Finally, Defendants asks the court to dismiss Plaintiff's claims on the basis of judicial estoppel, arguing that because Plaintiff released all his claims against Raymond James in the SEC Action with respect to the recovery of Phase I investments (including administrative fees), and the Southern District of Florida approved that settlement, Plaintiff cannot pursue those claims here.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [him or] her in a prior legal proceeding." *Decker v. Vt. Educ. Television, Inc.*, 13 F. Supp. 2d 569, 573 (D. Vt. 1998). This doctrine applies "only when that party advanced a clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner[.]" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997).

"A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) (internal quotation marks omitted). The Southern District of Florida's approval of the settlement agreement with Raymond James, which is not before the court, does not provide grounds for precluding Plaintiff's recovery. The court thus DENIES SSVR's motion to dismiss on the basis of judicial estoppel.

### CONCLUSION

For the foregoing reasons, SSVR's motion to strike Plaintiff's unauthorized new parties and claims from his TAC is DENIED. (Doc. 105.) SSVR's motion to dismiss Plaintiff's TAC is GRANTED as to the 9 V.S.A. § 2289(a) claim in Count Two and DENIED as to the remaining counts. (Doc. 106.) Defendants Dufour's and Hebert's

motion to dismiss Plaintiff's TAC is GRANTED as to Count Two in its entirety and

DENIED as to Plaintiff's remaining claims. (Doc. 120.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of January, 2020.

Christina Reiss, District Judge
United States District Court