MICHAEL I. GOLDBERG,
*as court appointed receiver in Securities
and Exchange Commission v. Ariel Quiros,
et al., U.S. District Court of South Florida,
case no. 16-21301-Gayles*,

Plaintiff,

v.

LOUIS DUFOUR, LOUIS HEBERT, and
SAINT-SAUVEUR VALLEY RESORTS,
INC.,

Defendants.

Case No. 2:17-cv-00061

## OPINION AND ORDER GRANTING
## PLAINTIFF'S PETITION FOR ISSUANCE OF LETTERS ROGATORY
(Doc. 143)

Plaintiff Michael I. Goldberg brings this action against Defendant Saint-Sauveur Valley Resorts, Inc., currently known as Valley Summits, Inc. ("SSVR"), Louis Dufour, and Louis Hebert (collectively, "Defendants") as a court-appointed receiver on behalf of Jay Peak Hotel Suites LP ("Phase I") and Jay Peak Hotel Suites Phase II LP ("Phase II"), which were formed pursuant to the federal EB-5 Immigrant Investor Program (the "EB-5 Program") in order to facilitate investment in Jay Peak, Inc. ("Jay Peak"), a Vermont corporation which owns a ski resort in Jay, Vermont (the "Resort"). In June of 2008, SSVR sold the Resort to Ariel Quiros and his corporation, Q Resorts, Inc. ("Q Resorts").

Pending before the court is Plaintiff's November 1, 2019 petition for issuance of letters rogatory to depose Alwynn Gillett, Esq., and Janice Naymark, Esq., attorneys who work for or formerly worked for the Canadian law firm Spiegel Sohmer and who represented SSVR in the 2008 sale of the Resort to Mr. Quiros. (Doc. 143.) Defendants filed an opposition on November 15, 2019, arguing that Plaintiff has failed to make a

compelling showing of why he needs to depose Attorneys Gillett and Naymark as Plaintiff has conducted no deposition discovery to date and thus cannot demonstrate that the information sought is not available from other sources. In addition, Defendants contend the information sought is protected by the attorney-client privilege.

Plaintiff is represented by Joshua L. Simonds, Esq., and Keith L. Miller, Esq. Defendants are represented by David M. Pocius, Esq., and Laurence May, Esq.

## I.  Relevant Factual and Procedural Background.

Attorneys Gillett and Naymark are Canadian attorneys practicing law in Montreal, Canada. According to Defendants, Attorney Gillett is currently employed at Spiegel Sohmer, while Attorney Naymark has left the firm. Plaintiff asserts that these attorneys "gave counsel to Defendants, which directly resulted in the transfer of $18 million of investor funds, which Quiros ultimately used to acquire the [Jay Peak] resort." (Doc. 143 at 1.) Both attorneys have refused to voluntarily appear for depositions in Montreal.

Spiegel Sohmer represented SSVR in the 2008 sale of the Resort but does not represent Defendants in this litigation. In support of his petition, Plaintiff attaches a proposed Request for International Judicial Assistance, in which he describes the proposed topics for examination as follows:

> Gillett and Naymark will be questioned on topics regarding the events, communications[,] and documents related to the sale of the Resort, including the transfer of investor monies to Quiros prior to the sale, which he allegedly tendered back to the Defendants as consideration for the sale. Each was or may have been involved in various communications with Quiros or his representatives and other third parties in connection with the sale of the Resort and the pre-sale transfer of investor monies.

(Doc. 143-1 at 3.)

Plaintiff asserts that the depositions of Attorneys Gillett and Naymark will yield relevant evidence because documents produced in discovery "indicate that the transfer of investor funds prior to the closing was repeatedly considered and discussed between the individual Defendants, their local counsel in Vermont[,] and [Attorneys Gillett and Naymark] both before and after the closing on June 23, 2008." (Doc. 143 at 3-4.) In addition, Plaintiff states that his counsel "has exhausted alternative means of obtaining

2

evidence and the evidence sought cannot be obtained otherwise than through the examination of these witnesses." *Id.* at 4.

Plaintiff has submitted an "Offer of Proof" which contains unredacted correspondence produced by SSVR, including the following communications:

- On May 20, 2008, Attorney Naymark forwarded Joel Burstein, the then manager of Raymond James & Associates ("Raymond James") and Mr. Quiros's son-in-law, copying Marielle Laplante, account opening documents for a Phase I account pursuant to their "conversation a few moments ago[.]" (Doc. 148-1 at 68.) She explained that the "funds which will be transferred into this account are to be used solely to purchase T-bills or other short term investment certificates which are government-insured[]" and that the account may "not to be linked with any other, nor may it be used as a basis or security for any line of credit or margin account or other form of borrowing." *Id.* In closing, she stated that Defendants Dufour and Hebert of Mont Saint-Sauveur International ("MSSI") must provide all instructions pertaining to the account.

- On May 28, 2008, Mark H. Scribner of Carroll & Scribner, P.C. emailed Attorney Gillett, copying Defendants Dufour and Hebert as well as Attorney Naymark, regarding the "SSVR Stock Transfer[.]" *Id.* at 27. In addition to forwarding the draft assignment of the purchase and sale agreement and a promissory note "in connection with [P]hase I," Mr. Scribner informed Attorney Gillett that he could not provide a "comfort letter" opining that neither MSSI nor SSVR will have "any responsibility post-closing for any of the [P]hase I or [P]hase II obligations under the offering statements[]" due to conflicts of interest which could arise from Mr. Scribner's representation of Jay Peak, Inc. in preparing the offerings and continued representation of the Phase I and II investors. *Id.* Mr. Scribner further highlighted that the Phase I and II limited partnerships, not MSSI or SSVR, were the soliciting entity for the offerings, and therefore "[t]he only 'obligations' of SSVR in either offering were to transfer a piece of land to the limited partnerships by sale or lease." *Id.*

- On June 17, 2008, Attorney Gillett emailed Fred Burgess[1] at the Burgess Law Firm and William Kelly, copying William Stenger, Ms. Laplante, and Attorney Naymark regarding the "Jay Peak Hotel Suites LP Phase II Account[,]" in which she expressed concern over an email from Raymond James stating that Mr. Stenger has opened a Phase II account at Raymond James because "[t]he term sheet and the stock transfer agreement remain clear that no investments for Phase II are to be accepted prior to Closing." *Id.* at 39. She requested confirmation that no funds have been accepted and asked whether any Phase II "entities have now been created." (Doc. 148-1 at 39.) Mr. Stenger responded that the Phase II

---

[1] Plaintiff asserts that Mr. Burgess represented Mr. Quiros in the 2008 sale of the Resort.

3

account was opened before the agreement was signed, that nothing has happened since, and that the Phase II account contained $7 million. Attorney Gillett forwarded Mr. Stenger's response to Mr. Scribner, copying Mr. Stenger, Defendants Dufour and Hebert, and Attorney Naymark, asking how it was possible that the Phase II account held $7 million because the "documentation had errors . . . and the new Phase II partnership had not been formed." *Id.* at 38.

- On June 18, 2008, Attorney Naymark emailed Mr. Quiros, Mr. Burgess, Mr. Kelly, and Mr. Burstein, copying Mark Wahl at Chittenden Bank, Mr. Scribner, Mr. Stenger, Defendants Dufour and Hebert, Ms. Laplante, and Attorney Gillett, regarding the transfer of Phase I and II funds to Raymond James and related escrow obligations. She noted that the Phase II funds consist of oversubscribed Phase I funds, transferred with the consent of investors, although she had not seen any documentation of the oversubscriptions. Mr. Burstein responded that Raymond James is "not supervising EB[-]5 money[]" and that "we are not escrow agents." *Id.* at 55. He stated another financial institution will be supervising the EB-5 funds and characterized Raymond James's role as "manag[ing] the corporate assets in a prudent manner and follow[ing] instruction by the authorized parties." *Id.*

- Later on June 18, 2008, Attorney Naymark emailed Mr. Stenger, copying Defendants Dufour and Hebert, Ms. Laplante, and Attorney Gillett, expressing her "need to understand why the Phase II money may be freely transferred." *Id.* at 58. She asked for identification of the documents the investors had signed and the instructions they had issued when the oversubscribed Phase I funds were transferred to Phase II because if "nothing was ever signed telling you how to hold onto it for Phase II, then the funds are in a sort of legal limbo." *Id.* She acknowledged that Phase II did not have escrow requirements and asked Mr. Stenger if the investors knew that. Mr. Stenger replied that "we" had fourteen investors who were holdovers from Phase I but had signed Phase II agreements. (Doc. 148-1 at 58.) According to Mr. Stenger, "[m]oving the funds into a higher yield secured account is within the [purview] of the Phase II program." *Id.*

- On June 20, 2008, Attorney Naymark emailed Mr. Burgess and Mr. Stenger, copying Mr. Scribner, Defendants Dufour and Hebert, Ms. Laplante, and Mr. Burstein, to ask if anyone was working on the transfer of Phase II funds from Chittenden Bank to Raymond James. She reviewed the sequence of events related to the transfer in light of the fact that the Phase II partnership did not legally exist, stating that Mr. Stenger needed to issue transfer instructions upon Defendants Dufour's and Hebert's approval. She noted their approval would be given "as soon as the price adjustment/operating line issue is resolved by Mr. Quiros and the 2 Louis." *Id.* at 72.

- On J[...] tt emailed Mr. Scribner asking him to "confirm that t[...] :ring were fixed and all references to Saint

[handwritten annotation: Per Jen's proof: I would not add in brackets indicating these are Dufour / Hebert so as not to insert judicial interp./ stick to the text. Please let me know if you would like me to change]

4

Sauveur were deleted[]" so as "to ensure that no versions mentioning MSSI or Saint-Sauveur Valley Resorts are in the possession of any investors or are being circulated." *Id.* at 81.

## II. Conclusions and Legal Analysis.

### A. Standard of Review.

Under Fed. R. Civ. P. 28(b)(1)(B), a deposition may be taken in a foreign country "under a letter of request, whether or not captioned a 'letter rogatory[.]'" A court may issue a letter of request "(A) on appropriate terms after an application and notice of it; and (B) without a showing that taking the deposition in another manner is impracticable or inconvenient." Fed. R. Civ. P. 28(b)(2). "It is well settled that the decision of whether to issue letters rogatory lies within a district court's sound discretion[,]" *United States v. Al Fawwaz*, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (alteration and footnote omitted), and "[c]ourts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) (considering a motion for the issuance of letters rogatory to permit third-party discovery in Canada).

Pursuant to 28 U.S.C. § 1781(b)(2), a letter rogatory or request may be transmitted "directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed[.]" "In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in [Federal Rule of Civil Procedure] 26." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012). Under Fed. R. Civ. P. 26(b)(1), parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Relevant information "need not be admissible in evidence to be discoverable." *Id.* "[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

5

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long 'accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark.'" *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (alteration in original) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)). Depositions may be taken "regarding *any* matter, not privileged, that is relevant to the claim or defense of *any* party[.]" *Id.* (emphasis in original) (citing Fed. R. Civ. P. 26(b)(1)). To the extent any claim of privilege is made, the deponent must assert that privilege for each question posed. *See In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) ("[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, . . . a burden not discharged by mere conclusory or ipse dixit assertions.") (citations and internal quotation marks omitted).

Foreign courts receiving letters rogatory "may have differing standards in determining whether to execute letters of request with regard to pre-trial discovery." *Crouch v. Liberty Pride Corp.*, 2016 WL 4718431, at *2 (E.D.N.Y. Sept. 9, 2016). Canada, which is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, applies its own "domestic statute or common law" to letters rogatory. *Lantheus*, 841 F. Supp. 2d at 777; *see also Allianz Sigorta, A.S. v. Ameritech Indus., Inc.*, 2016 WL 1127705, at *2 (E.D. Cal. Mar. 23, 2016) (noting Canada is not a party to this convention). Under the Canada Evidence Act, a Canadian court maintains the discretion to "command the attendance of [a] party or witness for the purpose of being examined" when "any court or tribunal outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a party or witness within the jurisdiction of the first mentioned court[.]" Canada Evidence Act, R.S.C. 1985, c. C–5, § 46(1).

### B. Whether Plaintiff May Depose SSVR's Former Attorneys.

Defendants do not contest Plaintiff's petition for letters rogatory on the grounds that the information sought is irrelevant, but rather assert that Plaintiff improperly seeks

6

to depose two attorneys who formerly represented SSVR in connection with the transaction underlying Plaintiff's claims for relief. In general, "depositions of opposing counsel are disfavored[.]" *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991); *see also Kleiman ex rel. Kleiman v. Jay Peak, Inc.*, 2012 WL 2498872, at *5 (D. Vt. June 27, 2012) ("Despite the otherwise lenient standard for discovery, depositions of opposing counsel are disfavored.") (citation and internal quotation marks omitted). However, Attorneys Gillett and Naymark are not opposing counsel in this lawsuit and, indeed, play no role in it other than as fact witnesses. *See Aco Fabrica de Calcado S.A. v. Tic-Tac-Toes Mfg. Corp.*, 2008 WL 11355382, at *1 (N.D.N.Y. Apr. 22, 2008) (allowing the deposition of an attorney that represented the plaintiff "in various matters that occurred prior to the commencement of this litigation[]" because of the "simple and basic relevant fact . . . that [the attorney] is not the opposing trial counsel in this action").

Regardless of whether a lawyer is opposing counsel, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *Friedman*, 350 F.3d at 72. The Second Circuit has instructed courts to take "a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship[,]" including:

> [T]he need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*Id.*[2]

### 1. The Need to Depose Attorneys Gillett and Naymark.

Plaintiff seeks to depose Attorneys Gillett and Naymark because they "were percipient witnesses to critical events dealing with third parties." (Doc. 148 at 3.)

---

[2] Plaintiff contends that "the discussion . . . in *Friedman* was advisory and not dispositive." (Doc. 148 at 3.) Plaintiff is correct that in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d

7

According to Plaintiff's Offer of Proof, Attorneys Gillett and Naymark have personal knowledge regarding SSVR's obligations pursuant to the Phase I and II offering memoranda; the transfer of Phase I and II funds from Chittenden Bank to Raymond James prior to the June 2008 sale of the Resort; the role of Mr. Stenger and Defendants Dufour and Hebert in those transactions; and the representations made by those individual defendants as well as by Raymond James regarding the transfer and management of those funds. Third parties are copied on portions of the communications; however, only Attorneys Gillett and Naymark can speak to "every fact and opinion" contained in the emails they authored. *Doe v. Town of Greenwich*, 2019 WL 4267692, at *5 (D. Conn. Sept. 10, 2019) (permitting the deposition of opposing counsel regarding a conversation between counsel and a defendant, even though similar testimony was available through a third party, where "only [the attorney] and [the defendant] have firsthand knowledge" of the contents). Plaintiff has thus established a need to depose Attorneys Gillett and Naymark.

Defendants rely on *Alcon Laboratories, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340 (S.D.N.Y. 2002) for the proposition that Plaintiff must exhaust all other avenues of discovery prior to deposing SSVR's former counsel. *Alcon*, which is both dated and non-precedential, is distinguishable. There, the court applied the Eighth Circuit's ruling from *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), that a party "must show that no other means exist to obtain the information it seeks other than to depose opposing counsel[.]" *Alcon*, 225 F. Supp. 2d at 343. The *Friedman* court disagreed with *Shelton* and rejected *Shelton*'s application in the Second Circuit. 350 F.3d at 72 n.4 (explaining that the court issued a non-binding opinion because two underlying courts "have assumed that the *Shelton* rule has been adopted by our Court, a view with which we disagree"). Under *Friedman*'s "flexible approach[,]" Plaintiff's failure to

---

65 (2d Cir. 2003), the lawyer agreed to the deposition prior to the issuance of the Second Circuit's opinion, rendering the opinion advisory. The *Friedman* court characterized its decision as a "discussion of the merits [that] will hopefully serve the useful purpose of cautioning about the limits of our prior rulings on a frequently litigated issue and perhaps avoid some needless appeals." *Id.* at 72 n.4. The court finds *Friedman*'s dicta persuasive.

8

exhaust other discovery mechanisms is merely part of the "relevant facts and circumstances" to be considered and does not preclude taking Attorneys Gillett's and Naymark's depositions. *Id.* at 72.

### 2. Attorneys Gillett's and Naymark's Roles.

Attorneys Gillett's and Naymark's depositions are not "likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case" because they are not counsel in this litigation. *See Johnson v. City of N.Y.*, 2018 WL 6727329, at *3 (E.D.N.Y. Dec. 21, 2018) (citation omitted) (permitting the deposition of opposing counsel where the plaintiff had two other attorneys representing him in the litigation and where the attorney had at least secondhand knowledge concerning a "key question in this lawsuit").

### 3. The Risk of Encountering Privilege and Work-Product Issues.

Defendants claim that all of Attorneys Gillett's and Naymark's testimony regarding the "events, communications[,] and documents related to the sale of the Resort[]" implicates the attorney-client privilege and Canadian ethical obligations, rendering their examination "futile[.]" (Doc. 147 at 7-8.) However, Plaintiff's Offer of Proof reveals that SSVR has disclosed the contents of emails and letters to third parties to whom no attorney-client privilege extends and SSVR thus appears to have waived any attorney-client privilege that may have existed. *See State v. Aiken*, 2015 VT 99, ¶ 20, 200 Vt. 247, 255, 129 A.3d 87, 92 (ruling that a defendant "waived the attorney-client privilege to the extent of his representations to [a third party] about his interaction with the public defender"); *Citibank, N.A. v. City of Burlington*, 2013 WL 12227252, at *1 (D. Vt. July 30, 2013) ("Under Vermont law, the attorney-client privilege may be waived if a party puts a communication between itself and its attorney at issue.") (citing *Chase v. Bowen*, 2008 VT 12, ¶ 30, 183 Vt. 187, 201, 945 A.2d 901, 911; *Steinfeld v. Dworkin*, 515 A.2d 1051, 1052 (Vt. 1986)); *232511 Invs., Ltd. v. Town of Stowe Dev. Review Bd.*, 2006 WL 5868424, at *2 (Vt. Feb. 1, 2006) ("[T]he attorney-client privilege may be

9

waived by disclosure to third parties, and . . . such waiver extends to all other communications on the same subject matter[.]") (unpublished entry order).

Because Plaintiff seeks to depose Attorneys Gillett and Naymark regarding non-privileged communications, the court will not preclude their depositions. Attorneys Gillett and Naymark may nonetheless "invoke the attorney-client privilege and refrain from responding if asked to disclose confidential communications between [themselves] and [their clients][.]" *Kleiman*, 2012 WL 2498872, at *6 (noting "it is somewhat difficult to determine whether the attorney-client privilege applies to [the attorney's] *potential* testimony" because his deposition "has not yet occurred") (emphasis in original); *see also In re Gawker Media LLC*, 2017 WL 2804870, at *7 (Bankr. S.D.N.Y. June 28, 2017) (holding that if attorneys' responses "implicate a privilege . . ., the [c]ourt can address those issues as it would in any other litigation"). The court also acknowledges that Canadian law and ethical obligations may be implicated in the application of the attorney-client privilege.

### 4. The Extent of Discovery Already Conducted.

Plaintiff has not undertaken any other depositions in this matter as of the date of his petition. Although the parties have exchanged written discovery, the deadline for depositions has not expired under the Fourth Amended Stipulated Discovery Schedule and nothing precludes the requested depositions.

### C. Scope of the Authorized Depositions.

The totality of the circumstances weighs in favor of permitting the depositions of Attorneys Gillett and Naymark. In recognition of Defendants' concerns regarding the breadth of the proposed topics for deposition, as well as Canadian law governing the attorney-client privilege, the court exercises its discretion to limit their depositions to the communications, issues, and subject matter raised in Plaintiff's Offer of Proof. *See EM Ltd.*, 695 F.3d at 207 (holding "the district court has broad discretion to limit discovery in a prudential and proportionate way"); *Mackenzie Architects, P.C. v. VLG Real Estates Developers, LLC*, 2017 WL 4898743, at *4 (N.D.N.Y. Mar. 3, 2017) (limiting the

deposition of plaintiff's attorney in a trademark case "solely to the issues raised in the counterclaims and the affirmative defenses").

## CONCLUSION

Because their depositions may yield evidence that is "relevant to [Plaintiff's] claim . . . and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), the court GRANTS Plaintiff's petition for the issuance of letters rogatory to depose Attorneys Gillett and Naymark. (Doc. 143.) The court further exercises its discretion to limit their depositions to the communications, issues, and subject matter set forth in Plaintiff's Offer of Proof. Plaintiff is directed to serve the letters rogatory at his own expense.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of January, 2020.

Christina Reiss, District Judge
United States District Court